Good morning, Your Honors. Gretchen Wolfinger for the United States. I reserve three minutes for rebuttal. The District Court decision in this case is incorrect and should be reversed. In denying the petition to enforce the summons, the District Court interpreted only a portion of the waiver provision when it determined that the letter at issue was privileged. Lucinda Rowley contemplated entering into a leveraged bond transaction and retained Arthur Anderson to advise them in that capacity. Arthur Anderson provided or drafted an opinion letter which was never finalized. The taxpayers subsequently entered into the leveraged bond transaction and claimed nearly an $8 million interest deduction on their tax returns. Pursuant to an announcement from the Internal Revenue Service, the taxpayers filed a tax shelter disclosure statement. With regard to that statement, they agreed to provide documents to the IRS including opinions or memoranda that provide a legal analysis of the transaction. In exchange, the Internal Revenue Service agreed to waive accuracy-related penalties, which in this case, contemplating the $8 million deduction, would have been substantial. In the course of investigating the taxpayers' tax liabilities, the IRS issued a summons to Wealth and Tax, which was the successor to Arthur Anderson. The language of the summons mirrored the language of the waiver provision, requesting documents that, or requesting opinions and memoranda that provided a legal analysis of the transaction. In response, Wealth and Tax determined that the letter at issue was responsive to the summons, but declined to provide it, citing the tax practitioner client privilege, Internal Revenue Code 7525. The government then filed a petition to enforce, where the – where Wealth and Tax again relied on the tax practitioner client privilege. In reaching its decision, the district court reviewed the letter in camera and determined that there were privilege communications in the letter, but determined that because the letter was only a draft, it did not fit within the opinion portion of the waiver provision. However, the district court said that it was a draft opinion. It was a draft opinion and not a full-blown opinion. Your argument is that it was a memorandum. Correct, Your Honor. I believe I'm the only person in the courtroom that hasn't seen the document. That's what I'm asking you, is you don't disagree with the reasoning. If it's a draft opinion and you don't quarrel that it doesn't fall under an opinion, under the opinion prong, you argue that it's a memorandum. Am I right about that? Your Honor, I believe it could be argued that the word opinion covers all opinions, draft and final. But in our brief, we concentrated on the memoranda portion of it. Not only concentrated, I mean, that's the argument you made, right? Yes, Your Honor. Are you changing it? I mean, are you saying it's an opinion other than a, you know, that a draft opinion is treated differently? Are you? I'm saying if the court were to find that, that the government would not argue with that. Okay. Because I believe you said it was never issued. It was never finalized. Okay.  So you're saying that the court will take you at your word that it's still a draft opinion and therefore you only know that from what the district court said. Yes, Your Honor. I haven't seen the letter. We only know that from what the district court said. The district court determined that it was a draft opinion letter, so relying on what the district court said. Assuming it's a draft, assuming it's never issued, then your main argument is that it comes under the memorandum prong. Yes, Your Honor. And the district court erred because it did not, it determined that it was not an opinion but never went on to analyze whether, in fact, it was a memorandum. And with regard to that argument, I would make three points. First, both Webster's and Black's dictionary define memorandum as an informal note or record. So clearly, the word encompasses much more informal communication such as what we have here, something that's a draft or something that wasn't finalized. Second, wealth and tax behavior was consistent with that interpretation. It found that the document was responsive to the summons. It didn't determine that because it was a draft or not finalized. It didn't need to be produced. It determined that it was covered by the summons and, therefore, in response, claimed a privilege. And it mentions it, it describes it in its privilege log as a memo, and it's discussed that way in one of the declarations, the Stroop Declaration. So that behavior is consistent with the government's interpretation of the word memorandum. And, finally, I would argue that to hold otherwise in this case would be to underline the tax disclosure initiative. First, in response to receiving these documents or having the taxpayer agree to provide them, the Internal Revenue Service provided a substantial benefit, which is the waiver of the active related penalties. Second, wealth and tax makes much of the fact that it was only a draft document that the taxpayers never saw, and it was never finalized. But the Internal Revenue Service can learn as much, perhaps even more, from a document that isn't finalized. I grant you that, but the initiative doesn't make it really crystal clear whether we're talking about final documents or things that are in draft form. I think it does, Your Honor. Does it say drafts and finals? It says all. And I think that would cover everything. I think for you to accept wealth and tax position, you have to read into the waiver provision language the word final. Does they have a rough draft that they're playing with the interlineations and things like that? That would be covered. That would be covered in the government's opinion, yes, Your Honor. And, finally, to interpret it any other way would conceivably present a situation where the taxpayer would look at a draft of an opinion letter, determine that the transaction was at high risk of being unlawful or was, in fact, unlawful, and would determine that they didn't want to finalize the letter, return it to the preparer, and if the government never saw it, that would permit somehow the taxpayer to, as we say in our brief, have its cake and eat it, too. Well, that problem could be eliminated by putting in the announcement that all drafts are covered as well. Yes, but I believe this, the tax disclosure initiative, the filing had to be made by a date that's already expired. They could do that for the future. But with regard to this language, that's what it would say. Yes, the IRS did certainly clarify it, Your Honor, but it didn't need to in our opinion. It says all, and that should cover everything. I think they had to issue the tax opinion letter and relied on it. Did they then argue that they're not liable to these penalties, that they're trying to escape through this, through agreeing with this government's offer here, to escape the penalties? My understanding, if I'm understanding your question correctly, Your Honor, by entering into the tax disclosure initiative, filing their statement, and they produced that document. Well, if they had lied or disagreed, but simply had received an opinion letter and had said they relied on it, would they then have a means of escaping these penalties? I believe that there is, for some of the tax shelters, a reliance on counsel, for lack of a better word, defense that could be made. I don't know if it would be applicable in this case, and I believe that the IRS would have to make that determination. Okay. Thank you. Any further questions? Thank you. Good morning, Your Honor. Good morning. David Jacobs for Wealth and Tax Services. I'm a little confused by the government's argument, because as I understood it in their brief, the government's argument was that the court below, the trial court, did not address whether the draft opinion letter was also a memorandum. What I'm hearing now today being presented to the court is that all documents are covered by what they're asking for, and that is not what they have argued to this court. What they have argued to this court is a very narrow issue, which is, did the trial court omit to consider whether the draft opinion letter was also a memorandum? That is what this court is to decide. We believe that argument, quite frankly, borders on the frivolous. This is the subject of contract. There was a contract that was entered into. It's a contract? I'm sorry? What makes you say it's a contract? The subpoena itself, of course, is not a contract. The summons, rather, itself is not a contract. But the summons picks up the language from what the attorney-client waiver is from, and it's very specific as to what language the government chose to use in that waiver letter, in that announcement. It specifically says, to take the government's point, opinions and memorandum. It does not say drafts. If the government meant to say drafts, it ought to have said drafts. This is a contract drafted by the government and is strictly constrained against the government. I don't find it a contract. The government made an offer in its administration of a contract that if certain things happen, it will trade its penalties. I don't find that a contract. I'm sorry, Your Honor. I couldn't hear you. I don't find that a contract. I find that the administrative actions of an internal revenue service. You're talking about the announcement? Yes. But the announcement, Your Honor, whether it's technically a contract or not, the taxpayer is looking at the language of that announcement and is making a decision based upon the language of that announcement. The language of that announcement does not say drafts. Although the memorandum. Well, it doesn't say draft opinion, nor does it say draft memorandum. I look at your opinion letter and I really don't know what's draft about it. What else is there to be done in that letter? You have to submit it to the taxpayer. Your Honor, the only evidence that is in the record with respect to the draft opinion letter is the testimony of the drafts person of that letter. It says, and she testifies without any contradiction from the government at all, that it is, in fact, a draft opinion, that it was not vetted by the people it would normally be vetted by, that it was, I believe, a first draft. So it is uncontroverted in this record that it is, in fact, a draft. Let me ask you this. The privilege belongs to the taxpayer and not to the accountant or the preparer, right? That's true. How does it benefit the taxpayer to have the privilege asserted here? I don't see how it benefits them at all. I see how it could benefit Arthur Anderson or his successors, but I don't see how it helps the taxpayer. The tax, well, the privilege does belong to the taxpayer and the taxpayer I understand that. We are asserting the privilege to the taxpayer. How does it protect the taxpayer? It protects the taxpayer because the taxpayer gets a pass on the penalties if he complies with the initiative. Yes. So I don't see how it helps the taxpayer to assert the privilege here. Well, it helps the taxpayer, Your Honor, because attorney-client privilege is one of the foundation stones of the law. Can you be a little more specific in this case? Well, the taxpayer decided to do what people rarely do, which is waive an attorney-client privilege, admittedly for certain benefits. But that has to be narrowly construed. The announcement is, says what it says, and to start writing into the announcement, again, drafted by the government, but relied upon by the taxpayer to start including other things like drafts. Let's suppose the letter, let me just make a hypothetical. Let's suppose the letter says you can't do what you want to do. Okay, this is an illegal transaction. You can't do it. But they go ahead and do it anyway. If they disclose the letter, they're not on the hook for penalties, right? That's correct. Okay, let's take the opposite. Suppose the letter says, yes, this is a legal shelter. You can do it. They disclose it. They're still not on the hook for penalties, right? That is correct. Okay. Now, my question again is how does keeping this letter under wraps help the taxpayer in any way in this case? Well, it helps the taxpayer, Your Honor, because a draft is a draft. A draft may have, first of all, it contains obviously communications within it from the taxpayer. Those things may be imperfectly understood. They may be incorrect. And so the reason we believe that drafts ought not be included in this, and the reason that the announcement says what it says, which is opinions, that is, issued opinions or issued memorandum, is because by that time you do have the facts correct. And it has been vetted by everybody it needs to be vetted by. So it protects the taxpayer because what you have here is something that is not complete. And if it's not complete, it's of benefit, it's of no particular benefit to anyone. It makes a difference if it's a finished item on which the taxpayer is relying or it sets forth in exquisite detail all of the things and they have explained that it is in fact correct. But if it is an incorrect document or a document that has been vetted, it's really of no value to anyone in that case, but the privilege ought to be sustained. Thank you. There's one other thing that I would like to bring to the Court's attention that is not in the brief, and I beg the Court's indulgence, but there is a Ninth Circuit decision. It's Tannenbaum v. Deloitte & Touche, 77F3337, which holds that the waiver is only in discussion if there has been disclosure of the document and not in any contract to waive. And that obviously has significance here because it's the government's position that there is a waiver because there was an agreement to waive. This decision, however, indicates that that waiver can only occur if in fact there has been disclosure, and in this case there has not been disclosure, and that a contract to disclosure in and of itself is not that waiver. Any other questions? Mr. Nelson, Judge Hall? Thank you, Mr. Jacobs. Thank you. Ms. Wolfinger, back to you. I would just make two points, Your Honors. I have not the opinion that the opposing counsel just mentioned I presume was not submitted to the Court in a 28J letter. I can't comment on it. If the Court would like us to comment on it, I would request supplemental briefing. We'll let you know. All right. Thank you. Second, the waiver language says all opinions and memoranda. It would be the government's position certainly that the word memoranda, memorandum, encompasses all informal communications, whether that be a finalized memo or a draft memo. The nature of the word itself would encompass that. But we would further argue that using the word all certainly would make the word memorandum encompass drafts and final versions of documents. If there's nothing further. Thank you. Thank you. Thank you, Mr. Jacobs, as well. The case just argued is submitted. Mr. Jacobs, before you buzz off, can you give us the site of Tenenbaum? I think you said 77 and 3rd, 337. But wait, would you hand it to Mr. Garcia there, please? Thank you.
judges: Hall, Nelson, Silverman